UNITED STATES COURT OF APPEALS

<u>Filed 2/21/96</u>TENTH CIRCUIT

WILLIAM E. LEWIS,                                          )
                                                          )
    Plaintiff-Appellant,                              )
                                                          )
    v.                                                )     No. 95-1161
                                                          ) (D.C. No. 93-S-2073)
McDONNELL DOUGLAS CORPORATION,                            )    (Dist. Colo.)
a Maryland corporation,                                    )
                                                          )
    Defendants-Appellees.                             )
                                                          )

ORDER AND JUDGMENT[*]

Before TACHA, HOLLOWAY, and BRISCOE, Circuit Judges.

Plaintiff, William E. Lewis, appeals the district court's order granting summary judgment in favor of his former employer, McDonnell Douglas Corporation, on his claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. We affirm.

In early 1992, Lewis was employed as a department manager for Instructional Technology at McDonnell Douglas Corporation's (MDC) McDonnell Douglas Training Systems (MDTS) facility in Aurora, Colorado. Lewis was 51 years old, was approaching his 25th year with MDC, and would have been fully vested under MDC's retirement benefit system in approximately 4 years.

In April 1992, MDC announced the closing of the Aurora facility effective

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

November 1992, and the transfer of most of the Aurora operations to MDC's world headquarters in St. Louis. As a result of the closure, all 189 positions at Aurora were scheduled to be eliminated. Because much of the work performed in Aurora was to be transferred to other facilities, MDC created several new positions at the locations. MDC managers Calvin Cooper, Ken Bloms, Bill James, and Joe Reeves were solely responsible for identifying new positions that needed to be created. As these new positions were identified and created, notice was posted on a bulletin board in Aurora and interested Aurora employees were allowed to apply for the positions.

Lewis alleges his primary concern was staying with MDC so that he could obtain full retirement benefits and eligibility. Thus, Lewis alleges, "[m]oney was no sticking point and a significant pay cut was not an issue." Appellant's br. at 2. Although he regularly checked the Aurora bulletin board, he did not apply for any of the posted positions. However, Lewis did contact Mark Darrah, manager of Department 354, MDC's St. Louis Design Engineering Department, about possible employment. Specifically, Lewis telephoned Darrah sometime in April 1992, and thereafter faxed him a resume and cover letter on May 12, 1992. The cover letter stated:

> Enclosed find my resume and one from Bill Ton.
> Just a few words about Bill. He has worked for me during most of both of his stints with MDC. He is a very bright and innovative person with a great deal of technical expertise. In short, he's a great asset. Bill is a Senior Technical Specialist, grade 63.
> As for myself, I would prefer St. Louis (or other parts of the country) work that commences late this fall or early this winter -- we have some construction underway at our residence and I would like to finish my responsibilities to Aurora's site manager.
> I'm currently a grade 78 (a MCAIR reorg. holding grade), Level F manager. I'd prefer, if possible, a Principal Technical Specialist slot.
> So you can get an idea of my capabilities/skills, I thought I'd pass on the names of some MCAIR, St. Louis folks you can talk to. These are people I've worked with, or for. Unfortunately, many others have recently

retired.

| | |
|---|---|
| Larry Lemke | Denny Behm |
| Bob Soucy | Mike Tkach |
| Dan Baerthel | Larry Doyle |
| Ed Winkler | J. D. Willow |

Appellant's append. II at 500.

At the time he received Lewis' letter and resume, Darrah was reviewing candidates to fill 3 to 5 "entry-level" positions in Department 354's Human Performance Laboratory (none of which were created as a result of the closing of the Aurora facility). According to Darrah, he weighed Lewis' qualifications and background when he received his resume, and decided Lewis "was a much higher level than an entry level position," and "his experience was not germane to the openings." Appellant's append. I at 277.

Darrah subsequently hired Katrine Helbing and Donna Murray, two female college recruits in their mid-20's, to fill two of the positions in Department 354. With respect to the position filled by Murray, Darrah stated that Lewis did not have "entry level armament loading experience," and his background and experiences "were not technically matched to what these programs needed." Appellant's append. I at 283-84. With respect to the position filled by Helbing, Darrah thought that Lewis probably could not have performed the job because

> [t]he Helbing job was specific to a very highly technical level of understanding human vision and visual interaction with controls and displays. At the time [Lewis] worked in these areas, he did not work at the technical level that today's world demands, things like night vision optics. Flying very fast at low levels at night in bad weather requires a very high level of technical experience in optical systems.

Appellant's append. I at 285.

Lewis' employment was terminated on November 20, 1992. He filed an age discrimination charge with the Equal Employment Opportunity Commission and

3

subsequently filed this action in the spring of 1994. Although Lewis originally alleged two separate and distinct episodes of age discrimination, one focusing on the denial of an opportunity to compete for the Department 354 positions and one focusing on the closure of the Aurora facility, he subsequently stipulated that his claim of age discrimination related solely to his application for employment in Department 354.

MDC filed a motion for summary judgment, and the district court issued a written order granting MDC's motion. The court concluded: (1) Lewis "was not suitably qualified for the two entry-level positions" in Department 354 because his grade level at the time of application was "much higher than an entry-level position" and he "did not express to [Darrah] that he would be willing to accept an entry level position"; (2) Lewis' experience was not germane to the openings in Department 354 because his relevant experience was not recent and did not fit the specific needs; and (3) Lewis did not actually apply for the two entry-level positions in Department 354. Appellant's append. III at 669-70. Moreover, the court rejected Lewis' "subjective belief that MDC was trying to save money on retirement benefits," as well as evidence of stray remarks made by certain MDC employees concerning his age and appearance. Id. at 670. The court concluded that, even if Lewis could present a prima facie case of age discrimination, he could not "meet his burden on summary judgment of discrediting MDC's nondiscriminatory reasons for his nonselection and presenting credible evidence to show that age actually played a determinative role in MDC's decisionmaking process." Id. at 673.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court under Fed. R. Civ. P. 56(c). Universal Money Centers

4

v. American Tel. & Tel., 22 F.3d 1527, 1529 (10th Cir.), cert. denied, 115 S.Ct. 655 (1994). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We examine the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. Applied Genetics, Intern. v. First Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990). If there is no genuine issue of material fact in dispute, we must determine whether the district court correctly applied the law. Id.

Although this case arose from a reduction in force at MDC's Aurora facility, Lewis' theory of discrimination is more analogous to a failure-to-hire claim. Specifically, Lewis is not claiming that he was treated less favorably than younger employees during the reduction in force; rather, he is claiming the positions he allegedly applied for in Department 354 were filled by younger people. Accordingly, to establish a prima facie case of age discrimination under a "failure-to-hire" theory, Lewis must show (1) that he belongs to the protected class, (2) that he applied for and was qualified for the job, (3) that despite his qualifications he was rejected, and (4) that the employer either ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants from among those having Lewis' qualifications. Barber v. CSX Distribution Services, 68 F.3d 694, 698 (3d Cir. 1995); see also Coe v. Yellow Freight System, 646 F.2d 444, 448-49 (10th Cir. 1981).

Once a plaintiff establishes a prima facie case, the law creates a presumption of unlawful discrimination, and the defendant employer must articulate a legitimate, nondiscriminatory reason for not hiring the plaintiff. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). The employer "need not persuade the court that it

was actually motivated by the proffered reasons," but satisfies its burden merely by raising "a genuine issue of fact as to whether it discriminated against the plaintiff." Id. at 254. If the burden of production is carried by the defendant, the plaintiff is given the opportunity to prove the reasons provided by the employer are a pretext for discrimination. Id. at 253. The plaintiff retains the ultimate burden of proving he was the victim of intentional discrimination. Id.

Assuming for purposes of argument that Lewis can establish a prima facie case of discrimination, MDC has offered evidence demonstrating legitimate, nondiscriminatory reasons why he was not hired for either of the positions in Department 354. Specifically, the testimony of Darrah indicates that Lewis did not have the recent technological background or experience. This testimony is supported by a review of Lewis' employment biography, which indicates his educational background was in psychology, not engineering. In contrast, Helbing and Murray had recently graduated with degrees in industrial and systems engineering and human factors engineering, respectively. Appellant's append. II at 521, 532. Although Lewis offered evidence indicating he had actual work experience in the area of human factors, he has not controverted Darrah's conclusion that this experience was "not technically matched to what these programs needed." Appellant's append. I at 284; see Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir.1988) (in deciding whether an employee is qualified for a position with her employer, "[i]t is the perception of the decision maker which is relevant, not [the employee's] perception of herself.").

Finally, Lewis has failed to present any evidence from which a finder of fact could conclude that MDC's proffered reasons for not hiring him in Department 354 were

6

pretextual. With respect to the various remarks allegedly made by management personnel at the Aurora facility concerning his clothing and age, they amount to nothing more than "stray" remarks that have no connection to the alleged discrimination. See Palochko v. Manville Corp., 21 F.3d 981, 982 (10th Cir. 1994); Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994). None of the people who allegedly made these remarks had any input into Darrah's hiring decisions. As for the lack of written job descriptions for either of the positions at issue, this fact is insufficient to demonstrate pretext when considered with all of the surrounding facts. Undoubtedly, such evidence would have bolstered Darrah's testimony concerning the qualifications necessary for the positions. However, Lewis has not legitimately attacked those qualifications, and the lack of written job descriptions is irrelevant.

Lewis has failed to present sufficient evidence to create a genuine issue of fact concerning whether MDC discriminated against him on the basis of his age. The order granting MDC's motion for summary judgment is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

7